Submitted May 1, affirmed December 9, 2009

Linda D. BRITTON,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Oregon Halfway House, Inc.,
*Respondents.*

Employment Appeals Board
08AB2237; A140641

222 P3d 1121

Linda D. Britton filed the brief *pro se*.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent Oregon Halfway House, Inc.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Claimant seeks review of an Employment Appeals Board (EAB) order denying her claim for unemployment benefits on the ground that she was discharged for misconduct.[1] ORS 657.176(2)(a). She assigns error to the EAB's factual findings. We review the EAB's factual findings for substantial evidence. ORS 183.482(8); *Confederated Tribes (Siletz) v. Employment Dept.*, 165 Or App 65, 68, 995 P2d 580 (2000). We affirm.

The EAB made the following factual findings:

"(1)   Oregon Halfway House, Inc. [employer] employed claimant as a case manager from November 29, 2004 to August 19, 2008.

"(2)   The employer operated a halfway house for federal prison inmates. The employer was subject to the requirements of the Federal Bureau of Prisons concerning the amount of time inmates were permitted to make visits into the community. In May 2008, the Bureau of Prisons established a new requirement that inmates be permitted to leave the employer's halfway house a maximum of four hours per week on 'itinerary passes.'

"(3)   On May 22, 2008, the case manager supervisor sent an email to claimant, the other case managers, and the inmates of the halfway house explaining the new Bureau of Prisons requirement and listing parameters for case managers to use when deciding whether or not to allow inmates itinerary passes. The parameters included reference to the four hour per week standard established by the Bureau of Prisons.

"(4)   Between May 22 and August 1, the employer's executive director observed that the case managers, including claimant, continued to allow inmates itinerary passes exceeding four hours community time per week. On August 1, 2008, the executive director sent an email to the case managers asking that they monitor itinerary passes more closely, and deny passes in excess of Bureau of Prison policy.

---

[1] Neither the claimant's employer nor the Employment Department filed a brief with this court.

"(5) On August 2, 2008, claimant approved one inmate's itinerary passes that total[ed] six and one-half hours. The inmate had already used itinerary passes totaling four and one-half hours that week. On August 2, 2008, claimant approved two other inmates' itinerary passes, one allowing an inmate to visit the community for six and one-half hours, a second allowing an inmate to visit the community for six hours.

"(6) On August 6, 2008, the executive director emailed claimant about her excessive approval of inmate itinerary passes. The email explained in detail that inmates were permitted only four hours per week social time in the community. The email explained that claimant consistently permitted the inmates on her case load to exceed the four-hour per week requirement, and stated that her conduct was not acceptable. The email instructed claimant to stop her practice of approving passes in excess of four hours per week immediately, and instructed claimant to confirm receipt and understanding of the email.

"(7) Claimant did not respond to the August 6 email. Over the following two weeks, claimant continued to approve inmate itinerary passes in excess of four hours per week. On August 19, 2008, the employer discharged claimant for violating its policy by approving itinerary passes for inmates in excess of four hours per week."

In addition, the EAB concluded that claimant repeatedly and consciously violated employer's policy and that claimant's conduct was wantonly negligent. The EAB concluded that claimant was discharged for misconduct and entered an order denying claimant unemployment benefits. ORS 657.176(2)(a).

Claimant petitioned for review, assigning error to the EAB's factual findings and the EAB's ultimate finding of fact that claimant was wantonly negligent. We review the EAB's factual findings to determine whether they are supported by substantial evidence. *See Freeman v. Employment Dept.*, 195 Or App 417, 423, 98 P3d 402 (2004) (EAB determination that claimant was wantonly negligent, as defined in OAR 471-030-0038, is a finding of fact that must be supported by substantial evidence). In reviewing the EAB's factual findings for substantial evidence, we review the record to determine whether there is sufficient evidence in the entire

record such that a reasonable person could have made the factual findings that the EAB made. In cases of conflicting evidence, we reexamine the record to determine whether the evidence supports the EAB's factual findings. We do not review the record to determine whether there was evidence in the record to support petitioner's view of the evidence. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 296, 787 P2d 884 (1990).

■     Claimant first assigns error to the EAB's finding that employer established a policy that limited itinerary passes to four hours per week. The record contains a copy of the e-mail that employer sent to claimant describing the limited itinerary pass policy and a copy of a poster that employer distributed to claimant and other case managers describing the new policy. Substantial evidence in the record supports that finding.

Next, we consider claimant's assignment of error to the EAB's factual finding that claimant issued itinerary passes that authorized community time for inmates in excess of the four-hour limit after employer notified claimant of the new policy on May 22. Claimant contends that those findings are not supported by substantial evidence because the itinerary passes that exceeded the four-hour limit were limited to the last week in July. However, claimant's assertion that no other evidence in the record supports the EAB's finding is incorrect. Claimant's supervisor testified that claimant issued itinerary passes exceeding the four-hour limit between May 22 and August 19. Specifically, the supervisor testified that she had a "big bag" of itinerary passes, and a stack signed by claimant that violated employer's policy. The supervisor then read from two of those passes that claimant signed on August 5. In addition, the record contains e-mails that the supervisor sent to claimant directing claimant to cease issuing excessive passes and to comply with the new itinerary pass policy. The supervisor's testimony and the e-mails provide evidence from which a reasonable person could find that claimant issued itinerary passes exceeding the four-hour limit between May 22 and August 19, 2008. Thus, the EAB's factual finding is supported by substantial evidence.

Next, claimant assigns error to the EAB's factual finding that claimant authorized itinerary passes for a specific inmate that exceeded four hours of community time. Claimant argues that she did not authorize passes that gave the inmate more than four hours of community time in one week. Three passes are at issue. Claimant argues that she did not sign one pass for two hours and that, although she signed the other two passes, she issued one of those passes for an exempt purpose.

Claimant misconstrues the EAB's finding. The EAB found that "claimant approved three itinerary passes totaling nine hours of community time for one female inmate after the inmate had already been approved for a two hour pass." The EAB did not find that claimant signed the two-hour pass; instead, the EAB found that, even though the inmate had only two hours of community time remaining, claimant authorized the inmate nine more hours of community time. In addition, claimant argues that she issued the inmate a pass for an exempt purpose—medical—when she issued a two-and-one-half-hour itinerary pass to the inmate. In its decision, the EAB explained that, even if claimant issued the pass for an exempt purpose, claimant still authorized passes for that inmate in excess of the four-hour limit. There is substantial evidence in the record to support the EAB's finding that claimant issued the inmate itinerary passes in excess of the four-hour limit.

Next, claimant assigns error to the EAB's factual finding that she was wantonly negligent in failing to comply with employer's itinerary pass policy. Claimant argues that, even if she violated employer's policy prior to August 1, there is not substantial evidence to support a finding that she was wantonly negligent after her supervisor's August 1 direction to comply with employer's policy. We disagree with claimant's argument. The EAB found that claimant's conduct was wantonly negligent because she repeatedly and consciously violated employer's policy between late-May and mid-August 2008. Claimant's argument assures that her conduct could not be wantonly negligent if she repeatedly and consciously violated employer's policy before employer's August 1 warning but followed employer's policy after the warning. We

question claimant's assumption. However, even if claimant is correct, there is substantial evidence in the record to support a finding that claimant's conduct *after* August 1 was wantonly negligent. The record contains itinerary passes signed by claimant that authorized excessive community time to inmates on August 2, the day after the supervisor warned claimant to comply with employer's policy. During the hearing, the supervisor described additional improper itinerary passes that claimant signed on August 5. Finally, the supervisor testified that, even after she sent claimant a second warning on August 6, claimant continued to issue improper itinerary passes.

OAR 471-030-0038(1)(c) defines wantonly negligent to mean

"indifference to the consequences of an act or series of actions, or a failure to act or a series of failures to act, where the individual acting or failing to act is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee."

In *Jordan v. Employment Dept.*, 195 Or App 404, 406, 97 P3d 1273 (2004), the employer discharged the claimant for violating its policy prohibiting employees from opening the employer's mail. The employer periodically asked the claimant to open some of the employer's mail, and the claimant started opening other mail without permission. Eventually, the employer discovered that the claimant was opening other mail. The claimant lied about opening that mail, and the employer discharged her. *Id.* The EAB found that the claimant was discharged for dishonesty and repeated violations of the employer's policy. *Id.* at 407. In affirming the EAB's order, we held that the claimant was wantonly negligent in repeatedly opening the employer's mail in violation of the employer's policy. *Id.* at 410.

Here, as in *Jordan*, there is substantial evidence to support the EAB's finding that claimant repeatedly violated her employer's policy. The EAB did not err when it found that claimant was wantonly negligent for repeatedly violating employer's policy.

Finally, we consider claimant's argument that her behavior was an isolated instance of poor judgment. OAR 471-030-0038(3) defines "isolated instances of poor judgment." It provides, in part:

"(a) As used in ORS 657.176(2)(a) and (b) a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct.

"(b) Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct."

We review the EAB's determination that claimant's conduct was not an isolated instance of misconduct for substantial reason and errors of law. *Freeman*, 195 Or App at 421.

We have held that "repetitious conduct in the face of a warning to cease" does not constitute an "isolated instance of poor judgment." *Halling v. Employment Div.*, 108 Or App 457, 461, 816 P2d 1173, *rev den*, 312 Or 525 (1991). Here, the EAB found that claimant repeatedly violated employer's policy from May 22 until August 19. Claimant's misconduct was not an isolated instance of poor judgment.

Substantial evidence in the record supports the EAB's factual finding that claimant was wantonly negligent, and substantial reason supports the EAB's conclusion that claimant's misconduct was not an isolated instance of poor judgment. The EAB did not err in determining that claimant was discharged for misconduct and in entering an order denying claimant unemployment benefits.

Affirmed.